JOSEPH ROBERT, GLORIA     *     NO. 2023-CA-0397
DECUIR-ROBERT, ALBERT
BIERRIA, GWENDOLYN     *
BIERRIA, ET AL             COURT OF APPEAL

                        *

VERSUS                       FOURTH CIRCUIT

                        *

STATE OF LOUISIANA,          STATE OF LOUISIANA
THROUGH THE GOVERNOR,    * * * * * * *
THE DIVISION OF
ADMINISTRATION, STATE
LAND OFFICE, AND THE
ORLEANS LEVEE DISTRICT,
AND THE SOUTHEAST
LOUISIANA FLOOD
PROTECTION AUTHORITY -
EAST

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2016-09374, DIVISION "F-14"
Honorable Jennifer M Medley,
* * * * * *
**Judge Tiffany Gautier Chase**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Paula A. Brown, Judge
Tiffany Gautier Chase)

Roy J. Rodney, Jr.
RODNEY & ETTER, LLC
935 Gravier Street, Suite 2110
New Orleans, LA 70112

Michael G. Bagneris
BAGNERIS, PIEKSEN AND ASSOCIATES, LLC
935 Gravier Street, Suite 2011
New Orleans, LA 70112

       COUNSEL FOR PLAINTIFF/APPELLEE

Andre' C. Gaudin
Christopher K. Tankersley
Craig J. Canizaro
BURGLASS & TANKERSLEY, LLC
5213 Airline Drive
Metairie, LA 70001

       COUNSEL FOR DEFENDANT/APPELLANT

                           **AFFIRMED**
                           **DECEMBER 06, 2023**

*TGC*
*RLB*
*PAB*

This appeal seeks review of the trial court's April 26, 2023 judgment granting the motion to certify class and motion to admit exhibits filed by Plaintiffs, Joseph Robert, Gloria Decuir-Robert and Gwendolyn Bierria (hereinafter collectively "the proposed class representatives"). The appeal is filed by Southeast Louisiana Flood Protection Authority-East and Orleans Levee District (hereinafter collectively "the Flood Protection Authority"). After consideration of the record before this Court, and the applicable law, we affirm the trial court's judgment.

<u>**Facts and Procedural History**</u>

The pertinent facts have previously been articulated by this Court:

Defendants are political subdivisions of the State of Louisiana. Plaintiffs are owners of immovable property that abuts the London Avenue Canal… .

In 2016, Plaintiffs filed suit against the State of Louisiana, and in 2017, Plaintiffs amended their petition and specifically named Defendants. The petition alleged Defendants committed an uncompensated taking of Plaintiffs' property through the 2015 amendment to La. R.S. 38:225.

\*\*\*

In 2015, by Acts 2015 Number 287, Section 1, La. R.S. 38:225 was amended effective August 1, 2015. Section (A)(1)(a) of 38:225

2

continued the fifteen-foot buffer to any waterway fronting a levee, whereas, Section (A)(1)(b)(i) and (ii) provided that the three named waterways, which included the [London Avenue] Canal, have a six-foot buffer, unless the federal government determined that a fifteen-foot buffer was necessary. Section (A)(1)(b)(i) and (ii) provided in pertinent part:

A. No person shall:

* * *

(b)(i) Place or cause to be placed upon or within six feet of any part of a levee fronting the 17th Street, Orleans Avenue, or London Avenue outfall drainage canals located in Orleans Parish that is not used for commercial navigation, and is subject to the control or surveillance of police juries, levee boards, municipal corporations, or other authorized boards or departments, any object, material, or matter of any kind or character which obstructs or interferes with the safety of the levees, or is an obstacle to the inspection, construction, maintenance, or repair of any levee; or place or cause to be placed any object, structure, material, or matter of any kind or character upon any part of any land which the state or any agency or subdivision thereof may own or acquire by deed, lease, servitude, charge, or otherwise, and through its authorized representative, may donate, grant, or otherwise convey to the United States rights-of-way, easements, or other servitudes for the construction, improvement, or maintenance of any flood-control structures, or natural or other waterway, which may obstruct or interfere with the improvement or maintenance of such waterway, or use of the land for flood-control purposes.

(ii) Item (i) of this Subparagraph shall not be applied if the federal government, including but not limited to the United States Army Corps of Engineers or the Federal Emergency Management Agency, requires, by law or regulation, the prohibition in Item (i) of this Subparagraph to be greater than six feet. In that event, the prohibition in Subparagraph (1)(a) of this Subsection shall apply to any part of a levee fronting the 17th Street, Orleans Avenue, or London Avenue outfall drainage canals located in Orleans Parish.

***

In the petition, Plaintiffs alleged a legislative taking as [a] result of La. R.S. 38:225, as amended in 2015. Specifically, they asserted the

3

following causes of action: (1) Fifth Amendment Takings Clause Violation pursuant to the Fifth Amendment of the United States Constitution and Louisiana Constitution, Article I, § 4; (2) inverse condemnation; and (3) denial of equal protection under the Louisiana State Constitution.

*Robert v. State*, 2020-0524, pp. 2-5 (La.App. 4 Cir. 8/12/21), 327 So.3d 546, 549-51 (footnotes omitted). After this Court reversed the trial court's granting of the motion for partial summary judgment and affirmed the trial court's denial of the Flood Protection Authority's prescription claim, the matter was remanded for further proceedings.[1] *Id.*, 2020-0524, p. 27, 327 So.3d at 565-66.

On December 29, 2016, the proposed class representatives filed a motion to certify the class and a hearing was initially scheduled on March 24, 2017. However, after numerous continuances, the parties jointly moved to submit the motion to certify the class on the pleadings.[2] The trial court granted the motion and by judgment dated April 26, 2023, granted the proposed class representatives' motion to certify the class and motion to admit exhibits. The trial court defined the class as follows:

> **ALL PROPERTY OWNERS WHO OWNED IMMOVABLE PROPERTY ABUTTING THE LONDON AVENUE CANAL, NEW ORLEANS, LOUISIANA, ON AUGUST 1, 2015, WHEN THE ALLEGED UNCOMPENSATED TAKING OCCURRED TO THE PRESENT.**

---

[1] With respect to the reversal of the trial court's grant of the proposed class representatives' motion for partial summary judgment, this Court found that the trial court "legally erred in finding La. R.S. 38:225, as amended in 2015, was a per se taking as a matter of law, and genuine issues of material fact remain if a taking is supported after a factual inquiry… ." *Robert*, 2020-0524, p. 24, 327 So.3d at 564.

[2] La. C.C.P. art. 592(3)(a) provides that "[n]o motion to certify an action as a class action shall be granted prior to a hearing on the motion… ." However, the parties filed a joint motion to certify the class on the pleadings and waived a formal hearing on the matter.

4

The trial court adopted, *in toto*, the following pleadings as its reasons for judgment: (1) the supplemental memorandum in support of [the proposed class representatives'] motion to certify class action; (2) the reply memorandum in support of [the proposed class representatives'] motion to certify class action and opposition to the Flood Protection Authority's objections to [the proposed class representatives'] exhibits; and (3) [the proposed class representatives'] motion and reply memorandum in support of the motion to admit exhibits. This appeal followed.[3]

## Assignments of Error

By its assignments of error, the Flood Protection Authority challenges the trial court's judgment granting of the proposed class representatives' motion to certify the class.[4] The Flood Protection Authority also seeks review of the portion of the judgment granting the proposed class representatives' motion to admit exhibits.

## Standard of Review

"The standard of review for class certification is bifurcated: factual findings are reviewed under the manifest error/clearly wrong standard, but the trial court's

---

[3] An amicus curiae brief was filed by the Association of Levee Boards of Louisiana, Inc. – the coordinating entity of levee districts, drainage districts and parish government in Louisiana. The amicus curiae brief addresses the same issues raised by the Flood Protection Authority however, expounds on certain arguments. Amicus curiae briefs are limited to only those issues raised by the parties. *See U. S. Fid. & Guar. Co. v. Victory Land Co.*, 410 So.2d 359, 361 (La.App. 4th Cir. 1982) (citations omitted) ("The law is well settled that issues not raised by the litigants cannot be raised by amicus curiae on appeal… . [R]elief beyond that which is sought by the parties cannot be requested by amicus curiae.").

[4] The Flood Protection Authority also list as an assignment of error that the trial court erred in adopting the proposed class representatives' memoranda as its written reasons for judgment in granting class certification. Appellate courts review judgments, not reasons for judgment. *Miccol Enterprises, Inc. v. City of New Orleans*, 2012-0864, p. 14 (La.App. 4 Cir. 12/19/12), 106 So.3d 746, 754 (quoting *Succession of Velasquez-Bain*, 471 So.2d 731, 751 (La.App. 4th Cir. 1985)). Additionally, judgments are often upheld on appeal for reasons different from those assigned by the trial court. *Wooley v. Lucksinger*, 2009-0571, p. 77 (La. 4/1/11), 61 So.3d 507, 572.

judgment on whether to certify the class is reviewed by the abuse of discretion standard." *Pollard v. Alpha Tech*, 2008-1486, p. 4 (La.App. 4 Cir. 1/28/10), 31 So.3d 576, 581 (citations omitted). As articulated in *Pollard*,

> These two standards of review correspond with the two-step process for determining whether to certify a class action. First, a trial court must find a factual basis exists to certify an action as a class action. Second, the court must exercise its discretion in deciding if certification is appropriate.

*Id.*, (quoting *Galijour v. Bank One Equity Investors-Bidco, Inc.*, 2005-1360, p. 7 (La.App. 4 Cir. 6/21/06), 935 So.2d 716, 722) (citation omitted) (emphasis omitted).

### Class Actions

A class action is not a traditional litigation procedure as it permits a representative with a typical claim to stand in judgment for similarly situated individuals. *Baker v. PHC-Minden, L.P.*, 2014-2243, p. 10 (La. 5/5/15), 167 So.3d 528, 537 (quoting *Ford v. Murphy Oil U.S.A., Inc.*, 1996-2913 (La. 9/9/97), 703 So.2d 542, 544). The procedure is utilized where a common interest exists for so many people that bringing each claim before the court is impracticable. *Id.* "The only issue to be considered by the trial court when ruling on certification…is whether the case at bar is one in which the procedural device is appropriate." *Baker*, 2014-2243, p. 10, 167 So.3d at 537. Whether plaintiffs have stated a cause of action or whether they will prevail on the merits of that cause of action is irrelevant at this stage of the proceedings. *Id.* (citation omitted). The only requirement for class certification is that the statutory elements have been satisfied. *Id.* (citation omitted).

Whether a class meets the requirements for certification requires a rigorous analysis. *Brooks v. Union Pacific R. Co.*, 2008-2035, p. 10 (La. 5/22/09), 13 So.3d,

546, 554. The trial court is required to evaluate and weigh the relevant factors in conjunction with the evidence presented. *See Id*. The party seeking to maintain the class has the burden of establishing that the statutory requirements for certifying a class have been satisfied. *Dupree v. Lafayette Ins. Co.*, 2009-2602, p. 10 (La. 11/30/10), 51 So.3d 673, 682. "Any errors to be made in deciding class action issues should be in favor of and not against the maintenance of the class action, because a class certification order is always subject to modification or decertification, 'if later developments during the course of the trial so require.'" *Baker*, 2014-2243, p. 11, 167 So.3d at 537 (quoting *McCastle v. Rollins Envtl. Servs. of Louisiana, Inc.*, 456 So.2d 612, 620 (La. 1984). Implicit in the decision to certify a class is recognizing that the certification inquiry is premised on factual determinations and the trial court's inherent power to manage litigation. *Id*., 2014-2243, p. 12, 167 So.3d at 538 (quoting *Brooks*, 2008-2035, p. 11, 13 So.3d at 554).

### Class Certification

La. C.C.P. arts. 591-597 govern Louisiana class action proceedings. La. C.C.P. art. 591 sets forth the requirements for class certification and provides, in pertinent part:

A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:

(1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of law or fact common to the class.

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.

(4) The representative parties will fairly and adequately protect the interests of the class.

7

(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. This prerequisite shall not be satisfied if it is necessary for the court to inquire into the merits of each potential class member's cause of action to determine whether an individual falls within the defined class.

La. C.C.P. art. 591(A). The requirements in La. C.C.P. art. 591(A) are often referred to as the following elements: numerosity, commonality, typicality, adequacy of representation and objective definability. Once the five prerequisites are satisfied, La. C.C.P. art. 591(B) "lists three additional criteria, one of which must also be satisfied for certification depending on the type of class action sought." *Baker*, 2014-2243, pp. 12-13, 167 So.3d at 538.[5] In the pleadings before this Court, and the trial court, the proposed class representatives assert that La. C.C.P. art. 591(B)(3) is the applicable additional element. La. C.C.P. art. 591(B)(3) provides, in pertinent part:

An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:

***

The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

With these principles in mind, we analyze whether the trial court erred in certifying the class.

---

[5] The Flood Protection Authority argues that the proposed class representatives do not satisfy La. C.C.P. art. 591(B)(1) as the proposed class representatives fail to prove that separate actions would create a risk of inconsistent or varying adjudications; or create a risk that individual adjudications would dispose of the interests of other properties not subject to the adjudication. *See* La. C.C.P. art. 591(B)(1). However, we find La. C.C.P. art. 591(B)(1) inapplicable.

**Numerosity**

The first element considered for class certification is that the members of the class be so numerous that joinder is impracticable. La. C.C.P. art. 591(A)(1). "A class action is appropriate whenever the interested parties appear to be so numerous that separate suits would unduly burden the courts, and a class action would clearly be more useful and judicially expedient than the other available procedures." *Davis v. Am. Home Products Corp.*, 2002-0942, p. 19 (La.App. 4 Cir. 3/26/03), 844 So.2d 242, 257 (citation omitted). Plaintiffs are not required to identify every member of the class prior to certification. *Id*. (citation omitted).

The proposed class representatives maintain that they satisfy the numerosity element as evidenced by the number of homeowners affected by La. R.S. 38:225. The Flood Protection Authority rejects this argument, contending that the putative class has no members because enforcement of the statute has not occurred. Thus, the record is devoid of evidence that a taking materialized.

"The determination of numerosity in part is based upon the number of putative class members, but is also based upon considerations of judicial economy in avoiding a multiplicity of lawsuits, financial resources of class members, and the size of the individual claims." *Davis*, 2002-0942, p. 19, 844 So.2d at 257 (citations omitted). The proposed class representatives assert that there are approximately 220 properties that abut the London Avenue Canal that could potentially be impacted by the 2015 amendment to La. R.S. 38:225. Considering judicial efficiency and the unknown financial resources of class members, we agree that it would be impractical for 220 interested parties to file separate suits. Moreover, the Flood Protection Authority's argument that the numerosity element is not satisfied because it has not enforced the statute is unpersuasive. Class certification is not

9

contingent upon whether a party will prevail on the merits. *See Baker*, 2014-2243, p. 10, 167 So.3d at 537. Accordingly, we find no error in the trial court's determination that the proposed class representatives have satisfied the numerosity element.

## Commonality

The second element considered for class certification is whether questions of fact or law exist that are common to the class. *Dupree*, 2009-2602, p. 11, 51 So.3d at 682. "A common question is one that, when answered as to one class member, is answered as to them all." *Id*., 2009-2602, p. 11, 51 So.3d at 683 (citations omitted). "[P]laintiffs seeking to satisfy this requirement must demonstrate their 'claims depend on a common contention, and that common contention must be one capable of class-wide resolution—one where the 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Baker*, 2014-2243, p. 20, 167 So.3d at 543 (quoting *Price v. Martin*, 2011-853, p. 10 (La. 12/6/11), 79 So.3d 960, 969.

The proposed class representatives assert that they share a common issue with the putative class—the impact of restricted use of their property pursuant to La. R.S. 38:225. The proposed class representatives also contend that they share the common relief sought with the putative class—compensation and injunctive relief. The Flood Protection Authority argues that the only common thread is the location of the properties and contend that each claim differs based on the use of the property and knowledge of the statutory restriction, which ultimately determines whether an individual will have a viable claim. We find the Flood Protection Authority's argument unpersuasive.

The proposed class representatives and the putative class own property that abuts the London Avenue Canal. Each property is subject to the restriction of La. R.S. 38:225 by the same government entity. Notwithstanding differences in use of the property and knowledge of the statutory restrictions, each claim shares a common issue that is central to the validity of all the claims—whether the restrictions imposed by La. R.S. 38:225 constitute a taking. This issue is common between the proposed class representatives and the putative class irrespective of the manner in which the property is being used. Accordingly, we find no error in the trial court's determination that the proposed class representatives have satisfied the commonality element.

### Typicality and Adequacy of Representation

The next two elements considered for class certification are typicality and adequacy of representation. Typicality requires the proposed class representatives' claims to be typical of the claims of the class. *Chalona v. Louisiana Citizens Prop. Ins. Corp.*, 2008-0257, p. 8 (La.App. 4 Cir. 6/11/08), 3 So.3d 494, 501. "A plaintiff's claim is typical if it rises out of the same event, practice, or course of conduct giving rise to the claims of the other class members and those claims arise from the same legal theory." *Baker*, 2014-2243, p. 21, 167 So.3d at 543 (citations omitted). For satisfaction of the typicality element, "[t]he representatives' claims need not exhibit all of the various types of possible injuries or elements of damages claimed by the class as a whole." *Allen v. Edwards*, 2019-0125, p. 15 (La.App. 1 Cir. 3/12/21), 322 So.3d 800, 811, *writ denied*, 2021-00502 (La. 6/22/21), 318 So.3d 705 (citing *Boyd v. Allied Signal, Inc.*, 2003-1840 (La.App. 1 Cir. 12/30/04), 898 So.2d 450, 464-65). Adequacy of representation requires "[t]he existence of representative parties who will adequately and fairly protect the interests of all

those in the class… ." *Chalona*, 2008-0257, p. 8, 3 So.3d at 501-02. "This element requires that the proposed class representatives prove that their claims are a cross section of, or typical of, the claims of all class members." *Id*., at 502 (citation omitted). Our Supreme Court has enumerated four "factors which may be relevant" in analyzing the adequacy of representation element:

1.   The representative must be able to demonstrate that he or she suffered an actual-vis-à-vis hypothetical-injury;

2.   The representative should possess [first-hand] knowledge or experience of the conduct at issue in the litigation;

3.   The representative's stake in the litigation, that is, the substantiality of his or her interest in winning the lawsuit, should be significant enough, relative to that of other class members, to ensure that representative's conscientious participation in the litigation; and

4.   The representative should not have interests seriously antagonistic to or in direct conflict with those of other class members, whether because the representative is subject to unique defenses or additional claims against him or her, or where the representative is seeking special or additional relief.

*Baker*, 2014-2243, p. 22, 167 So.3d at 543-44 (citations omitted). "The law only requires that the plaintiffs 'typically' and 'adequately' demonstrate that they represent a cross-section of the claims asserted on behalf of the class." *Johnson v. Orleans Par. Sch. Bd.*, 2000-0825, p. 10 (La.App. 4 Cir. 6/27/01), 790 So.2d 734, 742.

The proposed class representatives argue that their claims are typical and adequately represent the claims of the putative class because all claimants are similarly situated. The proposed class representatives contend that they share the following with the putative class: (1) all own property abutting the London Avenue Canal; (2) are unable to fully use and enjoy the property based on the restrictions outlined in La. R.S. 38:225; and (3) have not been compensated for the restricted

use of the property. The Flood Protection Authority maintains that the proposed class representatives cannot adequately represent the putative class because they do not share a typical claim and each claim differs because use of the property and knowledge of the statutory restrictions dictate whether an individual will have a viable claim.

The proposed class representatives and the putative class seek damages for injuries which occurred because of the same event. The proposed class representatives allege the same cause of action as the putative class—restricted use of their property; first-hand knowledge of the restrictions to their property as a result of La. R.S. 38:225; have a shared interest in winning the litigation with the putative class; and have not demonstrated a conflict with other class members. The proposed class representatives and the putative class likewise assert the same legal theory of whether the restrictions imposed by La. R.S. 38:225 constitute a taking. Additionally, the record reflects that potential members of the putative class testified that the proposed class representatives have actively participated in the proceedings and believe the proposed class representatives will adequately represent their interests. The record demonstrates that the proposed class representatives' claims are typical of the claims of the putative class and that the proposed class representatives can adequately represent the interests of the putative class. Accordingly, we find no error in the trial court's determination that the class representatives have satisfied the typicality and adequacy of representation elements.

**Objective Definability**

The fifth element considered for class certification is that the proposed class representatives demonstrate that the class is objectively defined in terms of

ascertainable criteria, in order to determine the constituency of the class for judgment purposes. La. C.C.P. art. 591(A)(5). The trial court's definition satisfies this element and provides as follows:

> **ALL PROPERTY OWNERS WHO OWNED IMMOVABLE PROPERTY ABUTTING THE LONDON AVENUE CANAL, NEW ORLEANS, LOUISIANA, ON AUGUST 1, 2015, WHEN THE ALLEGED UNCOMPENSATED TAKING OCCURRED TO THE PRESENT.**

We find this definition sufficient to identify those property owners whose property is subject to the restrictions of La. R.S. 38:225. Accordingly, we find no error in the trial court's determination that the proposed class representatives have satisfied the objective definability element.

### Predominance and Superiority

To obtain class certification, in addition to proving all elements of La. C.C.P. art. 591(A), the proposed class representatives must also demonstrate that common questions of law or fact predominate over any individual issues and that a class action proceeding is superior to any other procedural mechanism. La. C.C.P. art. 591(B)(3). Six factors are considered when weighing whether the predominance and superiority elements are satisfied:

(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;

(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c) The desirability or undesirability of concentrating the litigation in the particular forum;

(d) The difficulties likely to be encountered in the management of a class action;

(e) The practical ability of individual class members to pursue their claims without class certification;

14

(f)     The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation.

La. C.C.P. art. 591(B)(3)(a)-(f). The inquiry into whether a common issue predominates over an individual issue tests whether the proposed class warrants adjudication by representation instead of on an individual basis. *See Dupree*, 2009-2602, p. 11, 51 So.3d at 682 (citations omitted). In explaining that the predominance element is more demanding than the commonality element, our Supreme Court has stated that the commonality element "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class." *Brooks*, 2008-2035, p. 19, 13 So.3d at 560 (quoting *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003)). Thus, we will weigh the predominance and commonality arguments of the parties.

The proposed class representatives maintain that the common issue of restricted use of their property, without just compensation, is shared among the putative class. Additionally, the proposed class representatives assert that damages are not required to be identical for class certification. Conversely, the Flood Protection Authority argues that the proposed class representatives fail to satisfy La. C.C.P. art. 591(B)(3) because each putative class member has a unique set of facts which defeats commonality of the legal issue. Thus, resolution of one claim is not dispositive of the claims of the entire class. The Flood Protection Authority argues that among the putative class, there exists differences concerning the date of purchase of the individual properties; existence of a rear fence on each property; whether the owners reside or rent the property; knowledge of the restricted area

15

and debris removal following Hurricane Katrina; and location of the "levee toe" relative to the rear of each property.[6]

The overriding substantive common issue that predominates in this case is the restricted use of the putative class' property pursuant to La. R.S. 38:225. The same set of operative facts—that the putative class' properties abut the London Avenue Canal—forms the basis of the common issue—a property owner's right to be compensated for restricted use of their property by the government. As a determination of this substantive issue controls the outcome of the matter, it predominates over any individual issues that may be presented by any individual circumstance. Additionally, requiring the putative class to proceed individually seems financially impracticable and ultimately burdensome. "The trial court 'must evaluate, quantify and weigh [the relevant factors] to determine to what extent the class action would in each instance promote or detract from the goals of effectuating substantive law, judicial efficiency, and individual fairness.'" *Brooks*, 2008–2035, p. 10, 13 So.3d at 554 (quoting *McCastle*, 456 So.2d at 618). Given that the goal of most procedural devices, including class certification, is "to implement the substantive law, and to implement that law in a manner which will provide maximum fairness to all parties with a minimum expenditure of judicial effort," a class action is the superior procedural device in this matter. *Dupree*, 2009-2602, p. 41, 51 So.3d at 700 (quoting *Stevens v. Bd. of Trustees of Police Pension Fund of City of Shreveport*, 309 So.2d 144, 151 (La. 1975)). Accordingly, we find no error in the trial court's determination that the proposed class representatives have satisfied the predominance and superiority elements.

---

[6] A "levee toe" refers to the point of intersection of the levee slope with natural ground.

## Evidentiary Issues

The Flood Protection Authority argues that the trial court erred in granting the proposed class representatives' motion to admit exhibits over the objections articulated in its opposition. "A trial court is afforded great discretion concerning the admission of evidence…and its decision to admit or exclude evidence may not be reversed on appeal in the absence of an abuse of that discretion." *Alfred Conhagen, Inc., of Louisiana v. Ruhrpumpen, Inc.*, 2021-0396, p. 5 (La.App. 4 Cir. 4/13/22), 338 So.3d 55, 62 (citation omitted). The Flood Protection Authority objects to specific exhibits on the basis that: (1) the United States Army Corps of Engineers' aerial photos and detailed coordinates, as well as a special warranty deed are irrelevant to class certification; (2) the United States Army Corps of Engineers' aerial photos and detailed coordinates, a building permit and emails regarding the text of the 2015 amendment to La. R.S. 38:225 were not properly authenticated; (3) the trial court improperly considered witnesses' affidavits; (4) the trial court improperly considered deposition testimony from a witness who was not designated as an expert; and (5) the trial court improperly considered the Flood Protection Authority's board meeting minutes as the minutes constitute inadmissible hearsay. For ease of discussion, we categorize the Flood Protection Authority's objections to the exhibits as follows: irrelevant evidence, lack of proper authentication and inadmissible evidence. We will discuss each in turn.

### Irrelevant Evidence

The Flood Protection Authority argues the trial court erred in considering the United States Army Corps of Engineers' outdated aerial photos and detailed coordinates, and a special warranty deed. It contends that the United States Army Corps of Engineers' aerial photos and detailed coordinates from 2006 and 2008 are

irrelevant because the aerial photos and detailed coordinates have not been applied to any property by the Flood Protection Authority since the 2015 amendment to La. R.S. 38:225. The Flood Protection Authority also maintains that the special warranty deed is irrelevant. Despite the Flood Protection Authority's blanket statement, it fails to provide the reasoning behind the assertion.

Relevant evidence is "evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." La. C.E. art. 401. "The trial court is accorded great discretion in determining whether evidence is relevant; and, absent a clear abuse of discretion, rulings on relevancy will not be disturbed on appeal." *Melerine v. Tom's Marine & Salvage, LLC*, 2020-00571, p. 12 (La. 3/24/21), 315 So.3d 806, 815 (citation omitted). Relevance is not based on whether the aerial photos and detailed coordinates have been utilized by the Flood Protection Authority, rather the pertinent inquiry starts with the actual document. The documents provided the trial court with an aerial view and detailed coordinates of the properties of the proposed class. This information is relevant and germane to the trial court's determination as to which properties are impacted by the restrictions of La. R.S. 38:225. Additionally, the special warranty deed is another document submitted by the proposed class representatives which gives information about a property located in the area. This document depicts one property and was submitted for reference only. The inclusion of this document does not appear to give any weight to the determination of the merits. Considering the great discretion afforded a trial court in determining the relevancy of evidence, we will not disturb the trial court's ruling. Accordingly, the trial court did not abuse its discretion in considering the evidence.

**Lack of Proper Authentication**

The Flood Protection Authority argues the trial court erred in considering the United States Army Corps of Engineers' aerial photos and detailed coordinates, a building permit and emails regarding the text of the 2015 amendment to La. R.S. 38:225 because the documents were not properly authenticated by testifying witnesses. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." La. C.E. art. 901(A). Evidence may be authenticated to conform to the requirement of La. C.E. art. 901 through the "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances" surrounding the evidence. La. C.E. art. 901(B)(4). The United States Army Corps of Engineers' aerial photos and detailed coordinates are distinctive documents whose contents are self-explanatory. Likewise, the building permit and the emails regarding the text of the 2015 amendment to La. R.S. 38:225 are also self-explanatory. Accordingly, the trial court did not abuse its discretion in considering the evidence.

**Inadmissible Evidence**

*Affidavits*

The Flood Protection Authority argues that the trial court improperly considered the affidavits of the proposed class representatives and their experts rather than considering their deposition testimony. The Flood Protection Authority also contends that the trial court erred in admitting the affidavit of Stradford Goins, Sr.— a former Flood Protection Authority commissioner. An affidavit is generally inadmissible hearsay. *King's Joint Venture v. Marino*, 2002-0847, p. 5 (La.App. 4 Cir. 9/25/02), 827 So.2d 521, 524 (citations omitted). "In the rare instances where

19

an affidavit is acceptable as a substitute for testimony, an affidavit must be based on personal knowledge, must set forth only facts admissible in evidence, and must show that the affiant is competent to testify to the matters contained therein." *Id.*

The Flood Protection Authority challenges the trial court's consideration of the affidavits submitted in conjunction with the witnesses' deposition transcripts. We find the Flood Protection Authority's challenge lacks merit. The joint motion to certify the class permitted submission of any documents in conjunction with any deposition taken in the matter. A review of the record reveals that the affidavits were submitted in conjunction with the deposition transcripts of the proposed class representatives. Thus, we find no error in the trial court's consideration of the affidavits.

As to the affidavit of Mr. Goins, the affidavit provides his educational background and employment tenure with the Flood Protection Authority. His work with the Orleans Levee District, the Flood Protection Authority and the United States Army Corps of Engineers relative to the levee along the London Avenue Canal and potential property restrictions during his tenure as commissioner is also set forth in the affidavit. An affidavit is generally inadmissible hearsay. *King's Joint Venture*, p. 5, 827 So.2d at 524 (citations omitted). However, a review of the affidavit of Mr. Goins demonstrates that it is predicated on his personal knowledge in his capacity as commissioner, sets forth admissible facts and demonstrates that he is competent to testify regarding the London Avenue Canal restrictions. *See Id.* We find the trial court's acceptance of Mr. Goins' affidavit appropriate and thus find no error in the trial court's consideration of the affidavit.

***Opinion Testimony***

The Flood Protection Authority contends the trial court erred in considering opinion testimony from Stephen Estopinal, a former president of the Flood Protection Authority, who was not qualified as an expert.

"If the witness is not testifying as an expert, his testimony in the form of opinions…is limited to those opinions…which are: (1) [r]ationally based on the perception of the witness; and (2) [h]elpful to a clear understanding of his testimony or the determination of a fact at issue." La. C.E. art. 701. Mr. Estopinal provided testimony regarding the role of the Flood Protection Authority, in conjunction with other government entities, in lawfully obtaining the desired fifteen-foot buffer fronting the levee of the London Avenue Canal. Mr. Estopinal was president of the Flood Protection Authority during the time of the drafting of the 2015 amendment to La. R.S. 38:225 and provided specific insight of the need for the fifteen-foot buffer. Mr. Estopinal's opinion was based on his role as president of the Flood Protection Authority and provided the trial court with insight as to the deliberative process when determining the potential restrictions of La. R.S. 38:225. Accordingly, the trial court did not abuse its discretion in considering the evidence.

***Hearsay Documents***

The Flood Protection Authority maintains the trial court erred in considering emails regarding the text of the 2015 amendment to La. R.S. 38:225 and the Flood Protection Authority's board meeting minutes because the documents constitute inadmissible hearsay. La. C.E. art. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." A statement is

defined, in pertinent part, as "[a]n oral or written assertion." La. C.E. art. 801(A)(1). However, "[w]hen testimony concerning an out-of-court statement is not 'offered as an assertion to show the truth of the matter asserted therein,' such testimony is, by definition, not hearsay." *Buckbee v. United Gas Pipe Line Co., Inc.*, 561 So.2d 76, 80 (La. 1990) (citations omitted). A review of the record demonstrates that the emails and the board meeting minutes were not offered to prove the truth of the matter asserted. The documents were offered by the proposed class representatives to assist the trial court in understanding the complexity of the situation relative to the need for class certification. Accordingly, the trial court did not abuse its discretion in considering the evidence.

### Conclusion

The trial court found that the proposed class representatives satisfied the requirements of La. C.C.P. art. 591(A) and La. C.C.P. art. 591(B)(3). A trial court has vast discretion regarding class certification. *Brooks*, 2008-2035, p. 10, 13 So.3d at 554. A review of the record demonstrates that the evidence supports class certification as the numerosity, commonality, typicality, adequacy of representation, objective definability, predominance and superiority elements are all satisfied. Thus, we find no manifest error in the trial court's findings and no abuse of discretion in the determination that the requirements of La. C.C.P. art. 591 are satisfied.[7]

Moreover, we conclude that the trial court did not err in considering the exhibits admitted by the proposed class representatives. The joint motion to certify the class on the pleadings permitted both parties the ability to submit exhibits

---

[7] The parties are not bound by the certification order, as that class certification order is always subject to withdrawal, i.e. a class can be decertified. *See Baker*, 2014-2243, p. 11, 167 So.3d at 537 (quoting *McCastle*, 456 So.2d at 620).

including deposition transcripts and any documents produced in the matter, subject to objections by either party. The exhibits submitted by the proposed class representatives were necessary for the trial court's rigorous analysis in determining whether to certify the class. Considering that the parties agreed to have class certification determined based on the pleadings, without the benefit of live testimony, the trial court required any and all documents for its analysis. Given that we have determined the trial court did not err in certifying the class, we find the trial court appropriately weighed and considered the evidence submitted in support of class certification. Therefore, the trial court did not abuse its discretion in granting the proposed class representatives' motion to admit exhibits.

Accordingly, the trial court's judgment granting the proposed class representatives' motion to certify the class and motion to admit exhibits is affirmed.

## **Decree**

For the foregoing reasons, the April 26, 2023 judgment of the trial court is affirmed.

**AFFIRMED**